INHABITANTS OF TOWN OF NORRIDGEWOCK
*vs.*
INHABITANTS OF TOWN OF HEBRON

Somerset.    Opinion, January 2, 1957.

*Ames and Ames,* for plaintiff.

*Berman & Berman,*
*George C. West, Asst. Atty. General,* for State of Maine.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J. On April 13, 1949, one Thomas E. Noyes, while a resident of the Town of Norridgewock, fell into distress, and being in need of immediate support and relief, the Town of Norridgewock, through its overseers of the poor, furnished help to him, between April 13, 1949 and November 4, 1950 in the amount of $796.47.

The Inhabitants of the Town of Norridgewock, claiming that the pauper settlement of Thomas E. Noyes, was in the defendant Town of Hebron, gave the proper statutory notice to the Town of Hebron. Liability being denied, the Inhabitants of the Town of Norridgewock brought suit against the Inhabitants of the Town of Hebron, by writ dated November 4, 1950, to recover the amount of $796.47. There is no claim for interest in plaintiffs' declaration.

The defendant pleaded the general issue.

The case remained dormant, until May 20, 1954, at which time, by rule of reference, the cause was referred to a referee for determination, with the right of exceptions on questions of law, reserved to both parties. No further action was taken, until, on October 7, 1955, the parties agreed to submit the cause to the referee previously selected, upon a written agreed statement of facts.

No explanation is made for the long delay, and as far as the record is concerned, no blame for the delay can be placed on either party.

Hearing was had before the referee, and on November 4, 1955, the referee made a finding to the effect that Thomas E. Noyes had a legal pauper settlement in the town of Hebron and that the plaintiff was entitled to recover the amount of $796.47, plus interest, at the legal rate from November 4,

1950 (the date of the writ)' to the date of the award, in the amount of $238.94, a total debt or damage of $1035.41.

In due course, the plaintiff filed a motion addressed to the Superior Court asking that the report of the referee be accepted. In accordance with Rule XXI, defendant filed written objections to the acceptance of the report, specifying, in substance, that the referee erred in awarding interest in the amount of $238.94.

The report of the referee was accepted over the objections of the defendant, and, to this ruling, the defendant filed exceptions.

No other objections were filed to the report of the referee, so that the only issue for determination, is the legality of the awarding of interest, in the definite amount of $238.94.

The agreed statement of facts indicates that there were many difficult and complex questions of fact for the referee to pass upon in the determination of whether or not the pauper settlement of Thomas E. Noyes was in the defendant town.

In the agreed statement of facts is to be found the following statement:

> "The sole issue in the case is whether or not Thomas E. Noyes was, at the time of furnishing of the pauper aid, a person having his legal pauper settlement in the Town of Hebron so as legally to charge the Inhabitants of the Town of Hebron with the expense of his necessary care and support during the period above recited. If Thomas E. Noyes did have his legal pauper settlement in the Town of Hebron during the time the pauper supplies were furnished, as above mentioned, then the Town of Hebron is liable to the Inhabitants of the Town of Norridgewock for the amount claimed in this action; otherwise not. Such appears to be the primary issue in the case."

The defendant now argues that if it should be found that the referee was in error in awarding interest, that its exceptions must be sustained and the cause remanded to the Superior Court in accordance with the rule laid down in *Courtenay* v. *Gagne,* 141 Me. 302, at 305.

In that case, a referee had made an award for damages in a suit for personal injuries, and objection was made that the award was grossly excessive. The court said:

> "In cases heard by referees, no remittitur can be ordered. If the exceptions were sustained, the authority of this Court only goes to remanding the case to the Superior Court, where, in the discretion of the presiding Justice, the reference may be stricken off and the case heard by a jury, or there might be a recommittal to the same referees, or with the consent of the parties, a reference to new referees."

We take up first the issue of whether or not the plaintiff was entitled to interest from the date of the writ. Interest is the compensation fixed by agreement, or allowed by law, for the use or detention of moneys. It is interesting to note that by the ancient common law, it was not only unlawful, but criminal, to take any kind of interest. It was not until 1545, that the Statute of 37 Henry VIII was passed legalizing, within certain limitations, the taking of interest. *Sutherland on Damages,* Vol. I, Page 535. In the absence of a definite agreement to pay interest, our law now recognizes the use of money as valuable and allows interest, in proper cases, as damages for detention of money, when the debtor is in default, or guilty of fraud. Interest is imposed by law, as damages, for not discharging a debt when it ought to be paid. The principle has long been settled, that if a debt ought to be paid at a particular time, and is not then paid, through the default of the debtor, compensation in damages, equal to the value of money, which is the legal interest upon it, shall be paid during such time as the party

is in default. The important practical inquiry, in each case, in which interest is in question, is, what is the date at which this legal duty to pay, as an absolute present duty, arose. This date does not always coincide with that at which the demand is legally due and suable.

In the instant case, which was submitted to the referee, by agreed statement, upon the issue of the pauper settlement of the one to whom assistance has been rendered, it cannot be said that the defendant was in default until that issue had been determined by the finding of the referee on November 4, 1955.

It is, therefore, our opinion that the referee erred in awarding interest from the date of the writ.

However, by virtue of Sec. 20, Chap. 106, R. S. 1954, plaintiff is entitled to interest on the award reported by the referee, from the time of making such award, to the time of judgment.

Plaintiff, is, therefore, entitled to recover the amount of $796.47 together with interest, at the legal rate, from November 4, 1955, to the day judgment is entered.

Having determined that the referee was in error in adding the amount of $238.94, by way of interest, to his award, we pass now to the question of the practical disposition of the case, particularly in the light of the decision in *Courtenay* v. *Gagne, supra,* and other decisions of similar import.

In all the cases, previously before this court, in which the rule laid down in *Courtenay* v. *Gagne, supra,* has been applied, it is clear that in these cases, it was impossible to determine where the error, if any, on the part of referee, lay. In the instant case, however, we know the exact amount of the error, viz.: "$238.94."

The rights of the plaintiff have been properly determined, but for the erroneous entry of interest.

In the case of *Kennebec Housing Co.* v. *Barton,* 122 Me. 374, at 377, this court ended its opinion with this statement:

> "This case has once been fully heard before a tribunal selected by the parties. It is unnecessary and would be unfortunate to require a new trial on account of an inadvertent omission in a referee's report."

A study of this case does not seem to indicate that this particular statement on the part of the court was applied to the case under consideration. However, it is our opinion that it should be applied in this case. It appears to us that the primary purpose of court procedure is to secure justice, as expeditiously and promptly as possible. Surely it is unnecessary and would, indeed, be unfortunate to require a new trial.

This court is not without precedent in support of the principle, that the award of a referee may be accepted in part and rejected in part.

In *Orcutt* v. *Butler,* 42 Me. 83, the court said: "It has been determined by a series of decisions that an award may be good for part and bad for part. The Court will sustain the part which is good, if it can be so disconnected from the remainder of the award, that no injustice shall be done." See also, *Stanwood* v. *Mitchell,* 59 Me. 121 where the court said: "An award may be good in part and bad in part, and if separable the good will be affirmed." See also, *Day* v. *Hooper,* 51 Me. 178. True, these were cases in which actions had been brought upon awards made by referees appointed by agreement of the parties pursuant to what is now Chap. 121, R. S. 1954. However, the principle involved is analogous to the issue in this case. See also, *Rawson* v. *Hall,* 56 Me. 142, which was a reference by rule of court, in which the court, applied the principle that an award will be sustained, so far as the same is good, if it can be so disconnected from the remainder that no injustice will be done.

The exceptions of the defendant, to the award of interest, are sustained, with costs to the defendant. The award being good in part, and bad in part, and the good being separable from the bad, the cause is remanded to the Superior Court of Somerset County, judgment to be entered therein for the plaintiff, in the amount of $796.47, plus interest at the legal rate, from November 4, 1955, and less the amount of the legal costs to which the defendant is entitled.

*So Ordered.*